STATE OF NEW JERSEY, PLAINTIFF, v. MICHAEL GUIBILIO AND RAUL MONTESDEOCA, DEFENDANT.

Superior Court of New Jersey
Law Division

Decided February 4, 1976.

252

Mr. *Terence P. Corcoran,* designated counsel, argued the cause for defendant Michael Guibilio (*Mr. Stanley C. Van Ness,* Public Defender, attorney).

Mr. *Martin Kayne,* Assistant Prosecutor, argued the cause for plaintiff (*Mr. Burrell Ives Humphreys,* Passaic County Prosecutor, attorney).

JOELSON, A. J. S. C. Defendant Michael Guibilio has moved for severance in the trial of an indictment charging armed robbery, in which he is a codefendant with Raul Montesdeoca. It has been indicated that defendant Montesdeoca, will most likely testify in his own defense whereas defendant Guibilio will not. According to the brief of Guibilio's attorney and essentially confirmed by Montesdeoca's attorney at oral argument, Montesdeoca is expected to testify that on the night of the alleged robbery he saw Guibilio at the scene of the robbery in the presence of one of the victims shortly before the crime. Montesdeoca has no prior criminal record, but Guibilio has an extensive prior record including convictions for robbery.

It should be stated at the outset that we are not dealing here with a situation such as contemplated by *R.* 3:15–2 in which the State intends to introduce at trial a statement, confession or admission of one defendant inculpating another defendant. The assistant prosecutor represented at oral argument on this motion that the State would not introduce any such statement. If it did intend to do so a severance would clearly be required unless effective deletion

could be made. *State v. Barnett,* 53 N. J. 559 (1969); *State v. Young,* 46 N. J. 152 (1965). The good reason for this rule is that a statement standing alone cannot be cross-examined.

It's true that if a severance is granted the jury would not hear Montesdeoca's evidence, which can be damaging to Guibilio, but Guibilio has no constitutional right to have that damaging evidence withheld. "The constitutional right is to remain silent; it does not shield a defendant from the evidence against him or the compulsion it generates." *State v. Garvin,* 44 N. J. 268, 278 (1965).

Certainly, there would be no legal impediment to the State granting Montesdeoca immunity and using him as a State's witness against Guibilio. In that event Guibilio could no more shut off Montesdeoca's adverse testimony than he could bar an identification witness because his testimony would prove damaging. Since Montesdeoca could surely testify as a State's witness, there appears to be no need for a severance to prevent him from testifying in his own behalf in a joint trial. As has recently been said by the Appellate Division in *State v. Morales* (decided December 22, 1975), "a separate trial should not be allowed merely because it would offer defendant a better chance of acquittal."

A more troublesome aspect of this case is that defendant who expects to take the stand has no prior criminal record while defendant who does not plan to do so has an extensive and serious one. It is clear that the former's lawyer will be permitted in his summation to refer to the fact that his client voluntarily testified although under no legal compulsion to do so. It is equally clear that he will not be permitted to state or imply that the other defendant's failure to testify creates any inference of his guilt or acquiescence to the testimony of his codefendant. *State v. Lanzo,* 44 N. J. 560 (1965); *State v. Aviles,* 45 N. J. 152 (1965); *State v. McLaughlin,* 93 N. J. Super. 435 (App. Div. 1967).

The law in New Jersey does not require a severance where there are joint defendants, one with a criminal record and

the other without such a record. Our courts have never gone that far. Aside from the line of cases involving confessions or admissions, severance has been mandated only in case of unusual circumstances in which the fact that one defendant took the stand and another did not was but a single factor in a general pattern of prejudice. *State v. Sinclair*, 49 *N. J.* 525, 550 (1967). That case repeated the often stated holding that "a wide range of discretion necessarily reposes in the trial judge" with regard to a motion for severance. This emphasis on judicial discretion was repeated in *State v. Laws*, 50 *N. J.* 159 (1967), in which our Supreme Court refused to disturb a denial of severance in a case involving joint defendants. See also, *State v. Mayberry*, 52 *N. J.* 413 (1968).

█ If severance is not granted, Guibilio's counsel will, of course, have the complete right of vigorous cross-examination of the codefendant. Also, if Guibilio so wishes, he may choose voluntarily to testify in his own behalf. If he does, however, he will open the way for a disclosure of his criminal record to test his credibility. *N. J. S. A.* 2A:81–12; *State v. Hawthorne*, 49 *N. J.* 130 (1967). The choice is not a pretty one, but persons who have in the past opted for a life of crime do not usually leave themselves with pretty choices. We should not add to the backlog in our criminal calendars by holding separate trials in joint defendant cases because one codefendant may find his prior record to be burdensome. Furthermore, we do not usually know in advance of trial whether a codefendant will testify, let alone what he will say. By granting a severance in this case where we do know, we will be opening the door to endless mistrials in cases where a defendant professes to be surprised and aggrieved at trial by his codefendant's testifying.

Counsel for Guibilio has not cited any New Jersey cases in his argument for a severance, but he relies heavily on *De Luna v. United States*, 308 *F.* 2d 140 (5 Cir. 1962). In that case, in which the factual pattern is close to the case now under consideration, the counsel for the testifying co-

defendant without a criminal record summed up by contrasting his client's willingness to take the stand with the other defendant's unwillingness to do so. As the Circuit Court of Appeals said, "He stated plainly that an honest man is not afraid to take the stand and testify." The trial judge gave the jury a rather mild curative instruction. In reversing the conviction, the Fifth Circuit Court very understandably said:

> The court's instructions were intended, of course, to neutralize the effect of the comments. But considering the head-on collision between the two defendants, the repetition of the comments, and the extended colloquy over the comments between the trial judge and the lawyers, the imputation of guilt to de Luna was magnified to such an extent that it seems unrealistic to think any instruction to the jury could undo the prejudicial effects of the reference to de Luna's silence. The seed of inference was so well planted, it is fair to assume that it germinated."

Then it added the following single sentence paragraph (at 155) upon which counsel for Guibilio so strongly depends: "In short, for each of the defendants to see the face of Justice, they must be tried separately."

In *De Luna* there is an interesting and persuasive opinion by Judge Bell "concurring specially." This concurring opinion is, in effect, a dissent insofar as the severance aspect of the case is concerned. For although it agreed that a reversal was required because of the inference of guilt of the silent defendant raised by the attorney for the defendant who testified, it specifically disassociated itself from that part of the opinion which would require a severance. The concurring opinion stated:

> There is no authority whatever for the proposition that Gomez would in any wise have been deprived of a fair trial if the comments regarding the failure of de Luna to testify had not been made. He had no right to go that far. He did have the right to testify against de Luna as he did. * * *" [155]

The concurring opinion then went on to state:

The opinion of the majority will create an intolerable procedural problem. If Gomez, or others similarly situated, claims the right which the majority holds that he has to comment on the failure of de Luna to testify, a mistrial will be required at the instance of his co-defendant who did not take the stand. In addition, severance in advance of trial may be required where there is a representation to the court that one co-defendant does not expect to take the stand while another or others do expect to testify, and claim their right to comment upon the failure of the other to testify. This would eliminate joint trials, or vest in a defendant the right to a mistrial during final arguments, or in the alternative create built-in reversible error, all in the discretion of the defendants. The law contemplates no such end. [156]

*De Luna* does not appear to have been adopted by New Jersey courts. As a matter of fact, even the federal courts have dealt with it gingerly. Although several federal courts have cited it, the citations were usually to distinguish the factual pattern under consideration, and not flatly to endorse or apply it as far as the right to severance is concerned. *United States v. Parness,* 331 *F.* 2d 703 (3 Cir. 1964); *United States v. Addonizio,* 451 *F.* 2d 49 (3 Cir. 1971). On two occasions at least, a federal court has indicated a preference for the special concurring opinion in *De Luna.* Thus, in *United States v. Kahn,* 331 *F.* 2d 824 (7 Cir. 1967), the court refers to the severance discussion of the majority in *De Luna* as mere "dicta." Likewise, in *United States v. Bellinger,* 422 *F.* 2d 723 (9 Cir. 1970), the court (at 726) stresses the discretion of the trial judge, refers to the "dictum" regarding severance in *De Luna,* and clearly favors the approach of the special concurring opinion. The case that appears to come closest to adopting the majority view is *Rhone v. United States,* 125 *U. S. App. D. C.* 47, 365 *F.* 2d 980 (D. C. Cir. 1966).

Even without this posture of the federal courts on the issue of severance, this court would feel justified in relying on the following statement of our Supreme Court in *State v. Coleman,* 46 *N. J.* 16 (1965):

In passing on federal constitutional questions, the State Courts and the lower Federal Courts have the same responsibility and occupy the same position; there is parallelism but not paramountcy for both sets of Courts are governed by the same reviewing authority of the Supreme Court. [at 36]

See also, State v. Norflett, 67 N. J. 268, 286 (1975); Scalise v. Central Railroad of N. J., 129 N. J. Super. 303 (App. Div. 1967), certif. den. 50 N. J. 291 (1967). Since our highest court has never expressly adopted the De Luna approach, a trial court judge cannot assume it to be the law in this State.

The court has already indicated above that if Montesdeoca testifies at a joint trial his counsel in summation may properly tell the jury that his client took the stand although under no legal obligation to do so. It should be re-emphasized that Montesdeoca's counsel shall not, however, state nor imply that Guibilio's relinquishment of his right to testify creates any evidence or inference of guilt. In order to avoid any misunderstanding by Montesdeoca's attorney as to the limits of his permissible comment, it might be advisable for the trial judge before summation to approve in advance the language of counsel in this sensitive area. As for the prosecutor, he should not find it necessary to comment on the subject at all. In the event that Guibilio's attorney so requests, he will be entitled to have the trial judge charge the jury that Guibilio has the constitutional right of silence and that his election not to testify shall create no evidence or inference of guilt, nor be held against him.

The motion for severance will be denied. An order should be submitted accordingly.